E-FILED
Friday, 12 January, 2007   01:51:58 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SANDRA C. LEISTER, Ph.D., | ) |
| | ) |
| Plaintiff, | ) |
| | )   05-2115 |
| v. | ) |
| | ) |
| DOVETAIL, INC., MICHELLE | ) |
| PETERSON and EVAN PETERSON, | ) |
| | ) |
| Defendants. | ) |

ORDER

The plaintiff, Sandra C. Leister, Ph.D. ("Leister"), worked for defendant Dovetail, Inc. ("Dovetail") from March 1, 1997 until May 19, 2004.  During all relevant times, defendant Michelle Peterson ("Michelle") was president of Dovetail.  Michelle's husband, Evan Peterson ("Evan"), was Dovetail's vice-president.

Leister and Michelle had worked for Creative Care Management ("CCM"), a company that contracted to provide Employee Assistance Program services.  In February 1997, Michelle created Dovetail, bought contracts from CCM, and recruited Leister to work for Dovetail.  Included in Leister's compensation package at both CCM and Dovetail was a 401(k) deferred compensation plan.  Under the Dovetail plan (the "Plan"), Leister could elect to contribute up to 10% of her compensation into the 401(k).  Dovetail agreed to a provision for matching contributions.[1]  Leister claims that Dovetail did not match her contributions from 1998 through 2003; Leister also contends that some of her own contributions were withheld from her paycheck but not timely deposited into the Plan.

Leister has filed a complaint alleging, among other things, that the defendants (1) breached their fiduciary duty by failing to make (a) matching contributions, and (b) timely deposits of Leister's elective deferrals; (2) while acting as trustees and/or administrators, failed to provide Leister with pertinent documents for the Plan and Dovetail's long term disability plan; (3) terminated Leister's dental and long term disability insurance without notice to Leister; and (4) failed to provide Leister with all compensation promised to her according to the terms of her employment agreement.  Leister seeks an award for statutory penalties, attorney fees, unpaid compensation, unpaid dental bills, unpaid contributions to the Plan, and related lost investment income.

The parties have filed cross-motions for summary judgment [#26, #31].  For the

---

[1] As noted elsewhere in this order, the parties disagree on the interpretation of the provision for matching contributions.

following reasons, the defendants' motion is denied in its entirety. Leister's motion is granted in part and denied in part.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988). Once the movant has done so, the party opposing the motion bears the burden to respond, not simply by resting on the pleadings, but by affirmatively demonstrating that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-324.

In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). "If [the non-movant] does not [meet his burden], summary judgment, if appropriate, shall be entered against [the non-movant]." *See* Fed. R. Civ. P. 56(e).

As an initial matter, the court notes that the parties have filed lengthy statements of "material fact" and argument, and disputed each others' allegedly undisputed material facts supported by depositions, affidavits and counteraffidavits. Not surprisingly for a case involving a small employer, a closely held corporation owned by a married couple, and a benefit dispute affecting only one former employee, much of the case hinges on documents and the credibility of the witnesses. The case is not well suited to summary judgment based on statements contained in post-deposition affidavits and counteraffidavits. Although the Summary Plan Description ("SPD") might have aided in the resolution of some issues, the parties did not submit that document to the court. (The parties did, however, provide an Adoption Agreement, signed by Michelle, and a Certification of Investment Powers identifying Michelle as trustee.[2])

### I.  The defendants' motion

The defendants argue they are entitled to summary judgment because (1) Leister cannot show that the defendants owed or violated a fiduciary duty; (2) Dovetail's temporary corporate dissolution does not cause a period of individual liability; (3) even if the defendants are fiduciaries, Section 404(c) of ERISA absolves them of liability; (4) Leister's claims are barred

---

[2] *See* Def. Response, Ex. A [#33-3], Certification of Investment Powers, signature block, "Trustee Name (print)" identifying Michelle as trustee.

by waiver or the doctrine of laches or unclean hands; and (5) even if Leister prevails on a Section 502(a)(3) claim, that section of ERISA does not authorize money damages.

The essence of the defendants' first argument is that they acted as an employer and/or corporate officer, and owed no fiduciary duty to Leister by so acting. However, "employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust.[3] The fiduciary obligations imposed by ERISA are implicated only where an employer acts in its fiduciary capacity." *Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 582 (6th Cir. 2004). A fiduciary must discharge its duties solely in the interests of the plan's beneficiaries and recipients. *Bauer*, 368 F.3d at 582 (*citing* 29 U.S.C. § 1104(a)(1)(B)). The defendants owed a fiduciary duty to Leister to administer the Plan for her benefit.[4] Consequently, Evan and Michelle, as corporate officers, are not protected from a claim of breach of fiduciary duty simply because they were officers of Dovetail.

As noted above, the Certification of Investment Powers identified Michelle as trustee of the Plan. Michelle apparently made the decision not to submit matching 401(k) contributions for Leister. Evan and Michelle were the sole shareholders and officers of Dovetail, and they received substantial dividends for most of the years when Dovetail failed to make matching contributions for Leister. It is unclear whether, and to what extent, Evan was involved in the decision to keep Dovetail's profits for himself and Michelle rather than pay Leister's matching contributions. Consequently, there exists an issue of fact as to Evan's potential liability, his self-serving statements of passivity notwithstanding.

There being one basis for the defendants' potential liability as fiduciaries of the Plan, the court need not determine whether a brief corporate dissolution would be another basis for individual liability.

The defendants also argue that Section 404(c) of ERISA absolves them of liability caused by plan participants because the Dovetail Plan provided for individual accounts managed by the

---

[3] While the defendants point out that Michelle never promised Leister that Dovetail would make matching contributions for as long as Leister worked there, Michelle concedes that Dovetail made matching contributions for Leister in 1997. Michelle Dep. 54. Michelle understood that the matching would last until and unless she changed the Plan, and that she would need to notify Plan participants of any such change. Michelle Dep. 54-55. She states that she first considered eliminating the matching contributions in the summer of 2002. Michelle Dep. 55, 121. The plan terminated altogether on July 31, 2004. Michelle Dep. 118.

[4] Evan is not employed by Dovetail but has received dividends of around $14,000 per year. Michelle Dep. 74. Michelle received dividends of about $5,000 to $6,000 per year in addition to her salary. Michelle Dep. 74-75. Michelle acknowledges that around the summer of 2003, Dovetail hoped or planned to start paying $1,500 per month toward Leister's unpaid matching contributions. Michelle Dep. 94

participant, citing 29 U.S.C. § 404(c).  However, that section of ERISA is inapplicable to the facts present in this case.  True, Leister had a separate account within the Plan, had full control of her deferred funds, and made the final decision on how those funds would be invested.  However, Leister does not claim the defendants are liable for her own mismanagement; she claims they are liable for failing to deposit the required funds into her account in the first place.

The defendants also assert that Leister cannot prevail on her ERISA claim and her claim of unpaid compensation because she is barred by the doctrines of waiver, laches, and unclean hands.  The defendants assert that by continuing to work for the defendants, Leister accepted their repeated failure to make matching contributions and her continued employment demonstrates that acceptance.  Also, they contend that Leister "refused" to sell new contracts in 2002 and 2003 and her insistence on using her own forms to claim her commissions has hindered the defendants' ability to defend against the claim.  If these equitable defenses apply at all, the determination must turn on facts that are not adequately developed in the record now before the court.

Finally, the defendants argue that Leister cannot be awarded compensatory damages pursuant to ERISA Section 502(a)(3), which allows civil actions by a participant for "appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  But Leister seeks more than money damages or restitution, and at this stage of the litigation the facts are still in dispute. Any determination of the remedies potentially available to Leister would be premature.

The defendants make a number of arguments in addition to those addressed above.  Those arguments have been considered and found irrelevant or unavailing rather than overlooked.

The defendants' motion for summary judgment [#31] is denied in its entirety.

## II.  Leister's motion

As noted above, summary judgment is granted when there is no genuine issue of material fact, and *the movant* is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Where, as here, the parties have filed cross-motions for summary judgment, each party has had ample opportunity to raise all issues supporting summary judgment in its own favor.  This court's Local Rules limit a non-movant's response to the arguments raised by the movant.  CDIL-LR 7.1(D)(2)(c).  The response is limited to establishing that the movant is not entitled to summary judgment.

Responses in opposition to a motion for summary judgment are to be filed within 21 days after the motion is filed.  CDIL-LR 7.1(D)(2).  The response is not meant to give a party 21 days to take a second bite at the apple and assert new grounds for summary judgment in its *own* favor.  To so expand the purpose of the response would set in motion another round of responses and replies.  For these reasons, the court will not consider the defendants' arguments on matters that could, and should, have been raised in the defendants' own motion for summary judgment.

4

Leister moves the court for summary judgment on two issues: (1) her claim as to unpaid matching contributions; and (2) the defendants' failure to provide an SPD as required by ERISA, 29 U.S.C. §§ 1021-22.

Leister's first argument pertains to claims for unpaid matching contributions to her 401(k) account. When deposed, Michelle conceded that Dovetail had not paid at least $18,851.50 required for Leister's matching contributions.[5] Leister now states via affidavit that the total amount of matching contributions is $27,811.08. This assertion is generally disputed by the defendants. However, it is undisputed that Dovetail owed matching contributions that were not paid. Consequently, the court grants summary judgment on this issue, with the amount of the underpayment to be established at trial.[6] Whether the plaintiff is entitled to lost investment income on the matching contributions and, if so, the amount of that income, shall also be determined at trial.

Leister's second argument pertains to the defendants' failure to provide a written SPD upon request. She claims she requested the SPD on December 9, 2001 and on several dates thereafter. To date, she has received two documents, neither of which meets the statutory requirements for a summary plan description. *See* 29 U.S.C. § 1022. In addition, she has not received the summary annual report requested on April 20, 2005. The defendants argue that even if the documents provided did not meet the statutory requirements, Leister cannot show she was harmed by the failure to provide those documents.

Whether to award a statutory penalty is left to the sound discretion of the court. 29

---

[5] *See* Michelle Dep. pp. 56-57.

[6] The parties disagree about the proper method to calculate matching contributions. The Adoption Agreement states that Dovetail will make matching contributions in an amount equal to 50% of an employee's elective deferral. The Adoption Agreement further states, "Notwithstanding the matching contribution formula specified above, the Employer will not match a contributing Participant's Elective Deferrals in excess of . . . 10% of such Contributing Participant's Compensation." The parties disagree about the meaning of this language. According to the plaintiff, Dovetail was required to match half the amount of Leister's deferrals, with *Dovetail's match* not to exceed 10% of Leister's salary. According to the defendants, Dovetail was to match half the amount of Leister's deferrals but only to the extent that *her deferrals* did not exceed 10% of her income. For most of the relevant time period, Leister's base salary was $80,000. According to Leister's interpretation, she could defer up to the maximum allowed by law and Dovetail would provide matching contributions at 50% of the amount she deferred, so long as Dovetail's contribution did not exceed $8,000. According to the defendants, Dovetail was not required to match, at the 50% rate, anything beyond the first $8,000 of Leister's deferrals – in other words, Dovetail was committed, at most, to a $4,000 match per year.

U.S.C. § 1132(c)(1)(B).  A showing of injury is not a prerequisite to an award of statutory penalties for failure to provide documents.  *Harsch v. Eisenburg*, 956 F.2d 651, 662 (7th Cir. 1992) ("that the district court may award statutory penalties even when there is no provable injury by no means suggests that the court may not *deny* penalties when there *is* injury") (emphasis in original).

Consequently, at this stage, the court need only determine whether either of the two documents meets the requirements for a summary plan description.  29 U.S.C. § 1022 specifies the information to be incorporated in a summary plan description, and the defendants do not contend that the documents provided to Leister meet those requirements; instead, they argue that the imposition of statutory penalties is not warranted in this case.  The court is not prepared to determine on summary judgement whether to award statutory penalties -- and if so, how much those penalties should be.  The determination will be made after all the evidence is presented at trial.

The court grants summary judgment to Leister on the defendants' failure to provide her with a summary plan description.  All related issues (statutory penalties, attorney fees, etc.) will be considered at, or after, trial.

Finally, Leister argues that the defendants have indicated to her that they have abandoned their third affirmative defense.  She seeks summary judgment on this issue.  The defendants have not indicated to this court that they intend to abandon this affirmative defense; consequently, Leister's motion for judgment on this issue is denied at this time.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [#31] is denied in its entirety.  The plaintiff's motion for summary judgment [#26] is granted in part and denied in part.  The court grants judgment in favor of Leister on the issues of the defendants' underpayment of matching contributions and the defendants' failure to provide required documents pursuant to ERISA.  All other issues, including damages, restitution, penalties, and attorney fees, and other relief related to the issues resolved on summary judgment, will be determined at, or after, the bench trial to be held on Thursday, February 15, 2007, at 9:00 a.m.  A final pretrial conference will be held on Thursday, February 8, 2007 at 1:30 p.m. by personal appearance.

Entered this 12th day of January, 2007.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE